IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIMOTHY COOLEEN,**   Plaintiff | )<br>)<br>) |
| vs. | )   C.A.No. 04-63 Erie |
| | )   District Judge McLaughlin |
| **JOHN LAMANNA, et al.**   Defendants. | )   Magistrate Judge Baxter<br>) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I     RECOMMENDATION**

It is respectfully recommended that the motion to dismiss or for summary judgment filed by Defendants [Document # 47] be granted.

**II     REPORT**

Plaintiff, Timothy Cooleen, an inmate formerly incarcerated at the McKean Federal Correctional Institution in Bradford, Pennsylvania, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), on March 1, 2004. Named as Defendants are: John Lamanna, Warden; Gary Grimm, Associate Warden; Dennis Olson, Chief Medical Officer; Mr. Menna, Hospital Administrator; Herbert Beam, Staff Physician; Robert Klark, Camp Administrator; R. Smith, Chief Medical Officer; Todd Montgomery, Assistant Health Services Administrator; unnamed members of the Utilization Review Committee, all present or former employees of FCI - McKean; and the United States of America.

Initially, Plaintiff alleges that Defendants LaManna, Grimm, Olson, Menna, Beam, Klark, Smith, Montgomery, and unnamed URC members denied him adequate medical treatment for a back injury sustained during a prison work assignment, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment. Second, Plaintiff alleges

1

that Defendants Olson, Beam, Montgomery, LaManna, Menna, Klark, and unnamed URC members violated his Fifth Amendment right to due process. Third, Plaintiff brings a claim under the Federal Tort Claims Act against the United States for the negligent acts of its employees. See Document # 61, Plaintiff's Opposition Brief.

Defendants have moved to dismiss or in the alternative for summary judgment. Plaintiff has filed an Opposition Brief. As the issues are now fully briefed, they are ripe for review by this Court.

### A.    Standards of Review
#### 1.    *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

#### 2.    Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the complaint as deficient on its face, the Court

must take all allegations in the complaint as true. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891(3d Cir. 1977). However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. at 891. See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3rd Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).

In Mortensen, the Third Circuit delineated the standard of review to be used in a 12(b)(1) motion, as opposed to a motion under 12(b)(6), stating:

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. . . .
>
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56 . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

549 F.2d 884, 891. Accordingly, no presumptive truthfulness attaches to Plaintiff's allegations regarding subject matter jurisdiction.

### 3.     Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v.

3

Gamble, 429 U.S. 97 (1976).  The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).  Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

### 4.  Motion for summary judgment pursuant to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential

fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### B.     Relevant Medical History

Prior to his incarceration at FCI-McKean, Plaintiff had a disc herniation and surgery to repair it.

On March 21, 2002, Plaintiff injured his back during a work assignment. Five days later, Plaintiff reported to Health Services complaining of "mild discomfort" in his lower back. Document # 47, Exhibit B. Prison medical staff prescribed pain medication and alternating hot and cold compresses. Id.

On April 18, 2002, Plaintiff was seen by Defendant Dr. Herbert Beam, a staff physician, for lower back pain. According to Dr. Beam, he offered to prescribe a nonsteroidal anti-inflammatory drug for Plaintiff's back pain, but Plaintiff refused such medication. Id. at Exhibit C, page 1.

On May 3, 2002, Plaintiff was examined by Defendant Dr. Beam for lower back pain. Plaintiff claimed that the pain radiated down his left leg, but Defendant Beam observed that Plaintiff had no difficulty walking. Defendant Beam prescribed Motrin, advised Plaintiff to continue walking and return for a checkup in six weeks. Id. at page 9. Plaintiff alleges that he requested an MRI but that Defendant Beam denied his request. Document # 42, ¶ 26.

On May 26, 2002, Plaintiff was examined by Defendant Physician's Assistant Todd Montgomery. Plaintiff alleges that Defendant Montgomery told him he would be scheduled to see an orthopedic surgeon. Id. Plaintiff claims that no such appointment was ever made. Id.

On June 12, 2002, Plaintiff was examined by Defendant Dr. Beam during the Chronic Care Clinic. Plaintiff stated that he had "good and bad days" and the ibuprofen was not totally effective at managing his pain. Plaintiff's lower back was tender to the touch. Defendant Beam advised Plaintiff that he was considering referring him to an orthopedic consultant for treatment and directed him to followup in three months. Document # 47, Exhibit C, page 11. See also Beam Declaration, ¶ 18-19. Plaintiff alleges that again he requested an MRI, but that Defendant again rejected the request. Document # 42, ¶ 28.

Plaintiff alleges that on June 27, 2002, he sent a written request to Defendant Klark complaining about his poor medical care. Document # 42, ¶ 29. Plaintiff alleges that Defendant Klark did not respond to this written request. Id.

Plaintiff alleges that on July 3, 2002, he spoke to Defendant Beam about his condition and that Defendant Beam indicated to him that he would not be able to see the orthopedic surgeon and that Plaintiff would have to learn to "just deal with" the pain. Document # 42, ¶ 30. The medical records indicate that on July 3, 2002, Defendant Beam referred Plaintiff to Dr. Soares, an orthopedic consultant. Document # 47, Exhibit D.

On July 10, 2002, orthopedic consultant Dr. Soares (not a defendant in this case)

examined Plaintiff and gave him a trigger point injection for pain relief and recommended an MRI. Id. On July 19, 2002, the Utilization Review Committee (or "URC") received Dr. Soares' MRI recommendation and determined that, because Plaintiff was able to walk without difficulty, the MRI was not medically necessary. Document # 47, Beam Declaration, ¶ 22-23.

On July 15, 2002, Plaintiff alleges that he was examined by Physician Assistant Saylor (not a defendant). Plaintiff alleges that he complained of excruciating pain and that he was often light headed and that on several occasions he had almost blacked out due to pain. No treatment was provided to Plaintiff. Document # 42, ¶ 33.[1]

Plaintiff alleges that on July 17, 2002, as a result of incessant excruciating pain, he filed a written request to have his meals served to him in his cell and that in response Defendant Klark met with him in his cell. Id. at ¶ 34. Later, Physician's Assistant Gracia Fairbanks (not a defendant in this case) examined Plaintiff in his cell. The medical records indicate that Plaintiff could walk with difficulty but could not sit for meals in the mess hall. Ms. Fairbanks gave Plaintiff another injection for pain and notified Defendant Dr. Olson, Medical Director, of Plaintiff's condition. Dr. Olson prescribed Tylenol with codeine and Flexeril. Document # 47, at Exhibit C, page 13.

On July 19, 2002, Ms. Fairbanks examined Plaintiff and observed that he was walking slowly. Plaintiff complained that his pain level had increased and that the pain radiated down his leg. Ms. Fairbanks prescribed Naprosyn for the pain and inflammation and told Plaintiff to continue alternating between cold and hot compresses. Id. at Exhibit C, page 14. Defendant Olson referred Plaintiff for another examination by the orthopedic consultant. Id. at Exhibit E.

---

[1] In their motion to dismiss or for summary judgment, Defendants have not included this page as part of the exhibits. Within Exhibit C, several pages are missing; pages 2-5 ,12, 15, 18, 21, 29, 30, 33, 34, 37 - 40, and 42. In their Reply to Plaintiff's Oppostition, Defendants purport to include "an accurate copy of the medical records from April 2001 until December 2004." Document # 66, Exhibit A, Certification of Roberta Truman, Assistant Regional Counsel for the Federal Bureau of Prisons, ¶ 2. This Court notes that the pages have been renumbered and appear to flow sequentially without omission. However, there is substantial medical history between May 3 and July 17 (including the July 15 entry) which is missing from the second submission.

On July 24, 2002, Dr. Soares examined Plaintiff and gave him another trigger point injection for pain.  Dr. Soares again recommended an MRI and a possible referral to a pain management clinic or a neurosurgeon.  Id.

On August 1, 2002, Plaintiff filed an administrative remedy request requesting that an MRI be performed as soon as possible.  Document # 42, ¶ 39.  On August 5, 2002, Plaintiff was informed by Defendant Klark that the administrative request was moot because the URC had approved the MRI on August 2, 2002.  Id.  Plaintiff alleges that the MRI was never scheduled.  Id. at ¶ 40.

On August 16, 2002, Defendant Beam examined Plaintiff.  The housing unit staff had informed Beam that Plaintiff had been in bed for two weeks and had only occasionally gotten up for meals.  Plaintiff complained that the pain medication only took the edge off the pain but did not relieve it.  Defendant Beam recommended an urgent MRI of Plaintiff and prescribed Neurotin.  Id. at Exhibit C, page 16.

On August 21, 2002, Plaintiff received an MRI which revealed "a large herniation of the [disk at] L4-L5 on the left side."  Id. at Exhibit F.

On August 27, 2002, Defendant Olson again referred Plaintiff to the orthopedic consultant, Dr. Soares.  Id. at Exhibit G.

On August 28, 2002, Defendant Beam examined Plaintiff.  Plaintiff reported that the trigger point injections and Neurotin only slightly reduced his pain, but admitted that he had not taken any pain medication for several days.  Defendant Beam prescribed Tylenol with codeine and recommended that Plaintiff see the orthopedic consultant for follow-up.  Id. at Exhibit C, page 20.

On September 4, 2002, Plaintiff was examined by Dr. Soares, who recommended the Plaintiff be considered for a possible diskectomy and prescribed Tylenol with codeine for pain.  Id. at Exhibit G.

On September 11, 2002, Defendant Beam examined Plaintiff and found him to be in pain. Defendant Beam advised Plaintiff to walk more and to return in one week for another examination and a medication refill.  Id. at Exhibit C, page 22.

On September 23, 2002, Plaintiff consulted Defendant Beam by phone and the "decision was made by inmate and doctor not to renew medication." Plaintiff denied any improvement in his back but was observed walking freely without evidence of pain. The medical records indicate the "patient understands." Id. at Exhibit C, page 23.

On September 25, 2002, Plaintiff was examined by Defendant Beam in the Chronic Care Clinic. Plaintiff reported that he was doing better, his back pain was stable and he had discontinued the Tylenol with codeine. Plaintiff did not request additional pain medications. Id. at Exhibit C, page 24.

According to Defendant Beam, on October 1, 2002, the Bureau of Prisons' Medical Designations Section denied the request to transfer Plaintiff to a medical center for a diskectomy and advised FCI-McKean medical staff to continue local treatment. In his affidavit, Defendant Beam indicates that Plaintiff's condition had stabilized and his physical examination indicated that the conservative treatment was progressing favorably. Document # 47, Beam Declaration, ¶ 46.

An administrative note in the medical records indicates that on November 6, 2002, Defendant Beam saw Plaintiff in passing and Plaintiff was walking fluidly but indicated that he felt "no better, no worse." Id. at Exhibit C, page 26.

On December 24, 2002, Plaintiff was examined by Defendant Beam. Plaintiff complained that he had not been able to sit down in months and did not understand why he was no being operated on. Id. at Exhibit C, page 27.

On January 8, 2003, Defendant Beam examined Plaintiff. Defendant Beam indicated that his physical examination of Plaintiff did not support surgical intervention. Id. at Exhibit C, page 28.

In February, 2003, Plaintiff submitted two requests for another appointment with Dr. Soares to address the continued pain radiating down his legs. Defendant Beam referred Plaintiff to a neurosurgeon for consultation. Id. at Exhibit C, page 31.

On March 27, 2003, Dr. Steven Gilman, a neurosurgeon, examined Plaintiff and diagnosed a herniated disc with a L5 radiculopathy, based on Plaintiff's MRI taken in August

9

2002.  Dr. Gilman recommended another MRI in order to confirm the diagnosis and surgery to remove the herniated disc.  Id. at Exhibit H.  On April 2, 2003, Defendant Beam examined Plaintiff in the Chronic Care Clinic and advised him of the planned surgery.  Id. at Exhibit C, page 36.

On May 13, 2003, Plaintiff was admitted to Hamot Medical Center in Erie, Pennsylvania, for an MRI and spinal surgery.  Id. at Exhibit I.  Dr. Gilman indicated that the new MRI "showed complete resolution of the herniated disc."  Id. at Exhibit K.  Dr. Gilman indicated that "this was not the end of the problem" and that Plaintiff should be rechecked in three months.  Id.  Plaintiff was discharged from the hospital and returned to FCI-McKean.

The Medical Records indicate that on June 18, 2003, the Utilization Review Committee declined the request for follow-up treatment with Dr. Gilman because "disc had resolved completely."  Id. at Exhibit C, page 41.

On July 22, 2003, Plaintiff was examined by Defendant Montgomery.  Plaintiff claimed that he was in pain twenty four hours a day and he demanded a follow-up with the neurosurgeon, but declined pain medication.  Id. at Exhibit C, page 44.  Plaintiff request for followup with the neurosurgeon was referred to the URC, which was denied on August 20, 2003.  The reason for the denial is not indicated in the medical records.  Id.

According to Defendant Beam, Plaintiff was examined by Dr. Soares on August 20, 2003.  Dr. Soares recommended that Plaintiff continue with conservative treatment.  Document # 47, Beam Declaration, ¶ 61.  There is no record of this visit within the medical records.  See Id. at Exhibit C.

On September 11, 2003, Plaintiff was transferred to FCI-Schuylkill.

### C.    The *Bivens* Claims
#### 1.    *Respondeat Superior*

Defendants argue that Defendants Menna, LaManna, Grimm, Smith and Klark should be dismissed for failure to state a claim.  According to Plaintiff's second amended complaint, at all times relevant to the subject matter of this complaint,  Defendant Menna was the Hospital

10

Administrator; Defendant LaManna was the Warden; Defendant Grimm was the Associate Warden; Defendant Smith was the Hospital Administrator; and Defendant Klark was the Camp Administrator. Document # 42.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

As Plaintiff has not alleged any affirmative action on the part of Defendants Menna, Grimm, and Smith, these Defendants should be dismissed for failure to state a claim. Defendants' motion to dismiss should be granted in this regard. As Plaintiff has adequately alleged the personal involvement of Defendants Klark and LaManna, they should not be dismissed from this action on this basis.

### 2. The Eighth Amendment Claim

In his second amended complaint, Plaintiff alleges that he received substandard medical care following his back injury which occurred during an inmate work assignment on March 21,

11

2002.[2] In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976).

Plaintiff does not allege that he received no medical treatment - he only alleges that the conservative course of his treatment violates his Eighth Amendment rights. The medical records demonstrate that Plaintiff was seen numerous times by prison medical staff, as well as an orthopedic consultant and a neurosurgeon, and that his pain was treated with various pain medications. Therefore, Defendants were not deliberately indifferent and summary judgment

---

[2] Importantly, Plaintiff does not seek to recover for the injury itself. See Document # 60, Plaintiff's Oppostition Brief.

should be granted in favor of Defendants on this claim.

### 3. The Due Process Claim

Plaintiff claims that Defendants (only Olson, Beam, Montgomery, unnamed URC members, LaManna, Menna, and Klark) violated his right to due process when they denied medical attention for his injury and denied "sufficient information to intelligently exercise his rights pertaining to medical treatment." Document # 42, page 43, ¶ 123. Plaintiff does not indicate whether he is bringing his due process claim as one of procedural due process or substantive due process.

The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

### 1. Procedural Due Process

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a plaintiff must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). Absent such a constitutionally-protected interest, no procedural protections are due.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). In the prison context, liberty interests protected by procedural due process are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 284 (1995).

In this case, this Court liberally construes Plaintiff's complaint as alleging that Defendants deprived him of a liberty interest in his health and safety. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court recognized that under certain circumstances states may create liberty interests protected by the Fourteenth Amendment due process clause. But, in the prison context presented by this case, "these interests will be generally limited to freedom from restraint which . . . while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (italics added). In the present case, this Court does not consider receiving a conservative course of medical treatment for continued low back pain as an atypical and significant hardship in relation to the ordinary incidents of prison life.[3]

Summary judgment should be granted in favor of Defendants on this claim.

### 2. Substantive Due Process

In order to state a substantive due process claim under § 1983, a plaintiff must allege, as a threshold matter, that he has a constitutionally-protected liberty or property interest to which due process protection applies. Woodwind Estates v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000). Absent a protect interest, substantive due process is not implicated.

This Court liberally construes Plaintiff's claim as an alleged liberty interest in his health. Again, Plaintiff must meet the requirements of Sandin and this he cannot do. As discussed above, this Court does not consider receiving a conservative course of medical treatment for

---

[3] To set forth a cognizable procedural due process claim, Plaintiff must also demonstrate that he was deprived of the opportunity to be heard with regard to the conditions to which he was exposed such that he was denied "due process." In this case, Plaintiff utilized the administrative remedy process with regard to his medical treatment. As a result, Plaintiff cannot support a claim that he was deprived of the procedural protections afforded by the Due Process Clause.

continued low back pain as an atypical and significant hardship in relation to the ordinary incidents of prison life.

Therefore, summary judgment should be granted in favor of Defendants.

### C.     THE FTCA Claim and the Inmate Accident Compensation Act

Finally, Defendants argue that Plaintiff's FTCA claim is precluded by the Inmate Accident Compensation Act and therefore, this Court lacks subject matter jurisdiction over the claim.[4]

The Inmate Accident Compensation Act provides the remedy for injuries suffered at an inmate's work assignment. See 18 U.S.C. § 4126; United States v. Demko, 385 U.S. 149 (1966). The Act provides for the compensation of federal inmates who have suffered injuries "in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. Demko, 385 U.S. 149 (holding that FTCA claim is barred by the Inmate Accident Compensation Act); See also Ramirez v. Duteil, 2001 WL 1029521, at *3 (N.D.Tex) ("According to Defendants, the Inmate Accident Compensation Act is the sole remedy against the government when a federal prisoner's injury is work-related, and the cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job. [...] Ramirez' FTCA claim is likewise barred because it was compensable (and compensated) under the Inmate Accident Compensation Act."); Schoor v. Thornburgh, 983 F.2d 1068, 1069 (6th Cir. 1992) ("Plaintiff's exclusive remedy lies in the worker's compensation provision applicable to federal prisoners under 18 U.S.C. § 4126."); Shepard v. Stidham, 502 F.Supp. 1275, 1280 (M.D. Ala. 1980) ("As to Plaintiff's suit against the United States under the Federal Tort Claims Act, it is barred by 18

---

4 This Court need not reach the issue of whether the *Bivens* claims are precluded by the Inmate Compensation Act as their dismissal has already been recommended on other grounds. See infra; compare Springer v. United States, (unpublished opinion), 229 F.3d 1154 (6th Cir. 2000) (holding that the Inmate Compensation Act precludes *Bivens* actions) with Bagola v. Kindt, 131 F.3d 632 (7th Cir. 1997) (holding that the Inmate Compensation Act does not preclude *Bivens* action).

U.S.C. § 4126.").

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction over the FTCA claim should be granted.

### III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss or for summary judgment filed by Defendants [Document # 47] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
Chief United States Magistrate Judge

Dated: August 1, 2005