IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY COOLEEN,
        Plaintiff                      Civil action No. 04-0063 ERIE

vs.
                                          HON. Sean McLaughlin, USDJ
                                          HON Susan Paradise Baxter, USMJ

JOHN LAMANNA, et al.,
        Defendant

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF

## PLAINTIFFS MOTION FOR SUMMARY JUDGMENT

**FILED**

**MAY 1 6 2008**

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVAN...

Preliminary statement

    Plaintiff, pro-se, Timothy Cooleen submits this memorandum of law and the incorporates by reference the previously docketed " Cooleen's Declaration " in support of his motion for Summary Judgment in regards to the remaining " Bivens " claim as it has now been remanded to this Honorable Court for reconsideration.

    While Defendants continue to assert that plaintiff merely disagreed with Defendants "conservative treatment " of Plaintiff, and for reasons unknown to Plaintiff continue to defend the Civil Rights claim as they might a medical negligence claim, Plaintiff seeks to reiterate the basis for this claim as a " Bivens " claim for violation of his civil rights as guaranteed by the Eighth Amendment to The United States Constitution. This is the sole claim that has been remanded and my efforts here address this remaining issue.

1

A pattern of initial denial and ultimate delay of reasonable requests for medical treatment, given Plaintiff's prior injury history and obvious levels of pain associated with a serious spinal injury subjected him to undue suffering, both physical and emotional, while putting him at risk for further residual injury. Early on, requests were made for an MRI as well as access to an orthopedist to properly evaluate Plaintiff's injury. ( See Cooleen's Declaration paragraphs 8 through 14 ) These requests were denied.

In the Third Circuit, the Court" has found that the deliberate indifference standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, 3) erect arbitrary and burdensome procedures that result in interminable delays and outright denials of care, or 4) prevent an inmate from receiving recommended treatment for serious medical needs, or denies access to a physician capable of evaluating the need for treatment. See Monmouth v.Lanzaro, 834 F.2d 326, 346-47 (3rd Cir 1987); see also Durmer v. O'Carroll, 991 F.2d 64, 68 (3rd Cir. 1993)" as quoted in Cooleen v LaManna 05-4751

The Third Circuit had also " found " deliberate indifference " where prison officials continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm. "    See Rouse v . Plantier, 182 F.3d 192,197 (3rd Cir.1999) ; White v. Napolean, 897 F.2d 103 , 109 (3rd Cir. 1990).

Certainly the defendants were aware of the ineffectiveness of the injections, when after the first failed to give any lasting relief (Cooleen's Declaration, paragraph 15 as well as the medical file notes of Orthopedist Soares on July 24,2002 where he describes

2

plaintiff's leg pain as " Severe " ) where again the orthopedist recommends the MRI as well as a possible referral to a Neurosurgeon for a nerve block injection. This referral to a Neurosurgeon was never made , and having been disregarded on his recommendation for an MRI dated July10,2002 , Dr. Soares' second insistence that an MRI was " need(ed)"  was also disregarded until Plaintiff filed the second step in the administrative grievance process.  According to Beams Declaration (see paragraphs 31,32, and 33) he didn't make the referral any earlier than August 16,2002, though Defendant Klark told Plaintiff directly that he need not file the BP9 as he had already been approved by August 5, 2002. (see Cooleen's declaration paragraph 20 and 22 , where Plaintiff re-filed the BP9 on August 14, 2002) . As I knew it required the Initial BP8 to gain needed access to the orthopedist , Plaintiff filed a BP9 to receive the prescribed MRI . Immediately following the filing of the BP9 , Beam states he recommended the MRI.

While in many instances, Beams Declaration contradicts the medical record, his Declaration also reveals the issue with the URC.  Beam states that the URC deferred the MRI ( see paragraph 23 of Beam's Declaration) , while AUSA Kovac reports in his <u>Defendants Reply to Plaintiff's Opposition to Defendant's motion to dismiss or, in the Alternative, for Summary Judgment</u>  that a determination was never made.(see page 8 of Defendants reply)   Defendants Beam, Olson and Montgomery were named as members of the URC in a declaration by Roberta Truman and their decisions in regard to the denial of Plaintiff's prescribed treatment violated his Eight Amendment rights  as guaranteed by the United States Constitution and supported by current Third Circuit Law.

3

Defendant LaManna had put the URC in place as it was a new procedure within the BOP ( see page 7 of "Defendants Reply to Plaintiff's Opposition..." noted previously.).

According to defense Counsel, no published regulations existed as far as the decision making process. This haphazard arrangement contributed to the breakdown of the decision making process and LaManna is responsible for having instituted the procedure without having developed or trained those members in proper protocol to insure nothing fell through the cracks.

The Court in <u>MCCI</u> had also found erecting arbitrary and burdensome procedures that result in interminable delay and outright denials of care also meet the standard for deliberate indifference. The URC was just such a procedure.

While the Appellate decision in <u>Cooleen vs. LaManna 05-4751</u> noted the Plaintiff's physical condition, as it was reported by other medical staff in their footnotes( #4 on bottom of page 8 of the Appellate Opinion) and how markedly it contradicted Beams reasoning why the URC decided to reject the initial MRI recommended by the Orthopedist, as attested to in his Declaration , certainly Plaintiff's requests ,supported by the Orthopedist's insistence of July 24, 2002 that an MRI be administered, were reasonable. More pointedly, the second prescribed MRI , despite the Orthopedist's report that Plaintiff " continues to have severe leg pain" (Medical record notes 7-24-02) was not scheduled. As noted earlier, only the continued grievance process garnered the prescribed treatment nearly a month later. In response to Cooleen's filing of the BP9 Olson sought out a nurse that had recent contact. Nurse Rimer informed Olson of Plaintiff's physical condition after he inquired , "Whats up with this Cooleen guy ?" (See Cooleen's Declaration paragraph 22 for her uncensored response. )

4

As required by <u>Wilson vs. Seiter --US—111 S.Ct.2321, 115 L.Ed.2d 271(1991)</u>
The subjective prong of a culpable state of mind is evidenced not only by the repeated notations of Plaintiff's physical state, severe pain , and risk of further injury but more notably by the Defendants request to transfer Plaintiff to a Medical facility qualified to properly treat his serious medical need. No one can question that the spinal injury was of a serious nature, and given the observed and reported levels of pain denying and ultimately delaying prescribed treatment exposed plaintiff to undue suffering , both physical and emotional as he languished in pain , fearful of further life altering damage, praying to be helped. Certainly the two pronged threshold held in <u>West vs. Keve, 571 F2d 158, 161 (3rdcir.1978)</u> in regards to the seriousness of the injury as well as Defendants culpable state of mind has been satisfied.

Plaintiff was initially recommended for a referral to a Neurosurgeon on July 24,2002 by the Orthopedist, then again recommended a referral to a Neurosurgeon on September 4th,2002 for a possible diskectomy. This **second** referral was denied for six and a half months, and eight months from the initial referral and Plaintiff questions Beam's statements in ( paragraph 47 ) his Declaration that " examination still did not support surgical intervention" on Jan 8th,2003 and a couple of weeks later (paragraph 48) he had "decided that it was appropriate at this time to refer Mr. Cooleen to a Neurosurgeon for a consultation". Plaintiff asks…what had changed?

Plaintiff at this point had exhausted his Administrative remedies in an effort to secure the treatment prescribed by the Orthopedist and was now in compliance with the PLRA and able to initiate a lawsuit. Plaintiff had repeatedly made references to Beam that he would do all in his power to secure his rights as guaranteed by the Eighth Amendment.

5

(see Cooleen's Declaration paragraph 36 )

This Claim has never been about one prisoner's opinion on how his injury should have been treated. It is not merely a difference of opinion. This is a Claim of a repeated pattern of denial and delay of access to a physician qualified to evaluate Plaintiff's injury; denial and delay of prescribed treatment ; denial and delay of prescribed diagnostics and referrals to a specialist qualified to properly evaluate and treat Plaintiff's injury and ultimately, the residual effects of those repeated violations of Cooleen's Civil Rights.

Going further, the Courts have found " " deliberate indifference" where prison officials continue a course of treatment they know is painful, ineffective , or entails a substantial risk of serious harm." (See Rouse vs. Plantier 182 F.3d 192' 197 (3rd Cir. 1999) ; White Vs. Napolean , 897 F.2d 103 , 109 (3rd Cir. 1990 ).

After being informed of the failed injections , and disregarding the Orthopedists recommendations to refer to a Neurosurgeon for possible nerve block, and another referral for a possible diskectomy , Defendants reverted back to over the counter anti-inflammatories. These anti-inflammatories were discontinued after Plaintiff informed medical staff of the added complication of painful constipation due to their use. Their treatment had failed.( see Cooleen's declaration paragraph 27 )

More telling, Plaintiff questions how , after the URC petitioned Region for a Medical transfer , the Neurosurgeon consult never happened ? Once FCI McKean was Tasked with "pursuing local treatment" access to one qualified to evaluate plaintiff's Injury was **again** denied. ( See regional BP10 response : Cooleen's Declaration Paragraph 30 )

6

As for Defendant's Counsel seeking to limit liability to Beam, Olson, and in some respects to Montgomery, all named Defendants either participated personally in the denial and delay of access, or denial or delay of prescribed care. Respondeat Superior does not form the basis for Plaintiff's claims.

Lamanna participated directly in the process, having formed the URC with no training or protocols in place and through his active involvement of the grievance process from early on. In addition, LaManna, in a written letter responded to plaintiff's mother who pled for medical assistance for her son. Defendant LaManna failed to properly train and supervise his subordinates and had an active role in the delay and denial of treatment for plaintiff's serious medical needs that resulted in interminable delays and outright denials of care. Plaintiff suffered needlessly due to acts and omissions of the named Defendants. In <u>Lewis vs. Smith 855 F2d. 736 (11th Cir. 1998),</u> " Supervisory liability under sec. 1983 may be shown by either supervisor's personal participation in acts that comprisse constitutional violation or existence of casual connection linking supervisor's actions with violation. 42 USC sec 1983 " LaManna's indifference furthered Plaintiff's suffering.

Klark, who was head administrator at the satellite camp went even further by canceling previously authorized food delivery and commissary carriage assistance due to Plaintiff's inability to walk or sit without severe pains, this, only weeks after petitioning Region to transfer Plaintiff due to his medical state. This action put Plaintiff at risk of further injury as Klark knew of the extent of the spinal injury personally ( see Cooleen's Declaration paragraph 23, 28 and 29 ) yet sought to aggravate it, risking further injury. It is Plaintiff's belief Klark retaliated for Plaintiff having continued with the grievance process and for having filed the BP10 to region.

For a better perspective on what truly prompted **any** progress in ascertaining access to one capable of evaluating Plaintiff's injury, or the prescribed care once that access was gained, after repeated denials one need only look to the grievance process as that is all the administration fears as it's exhaustion is required under the PLRA before a suit may be initiated. This paper trail is what they apparently fear most.

Only after filing the BP8 did plaintiff gain access to the Orthopedist. Only after **re-filing** the BP9 did the MRI get scheduled. Only after filing the BP10 did the Administration petition the Regional BOP to transfer me to a Medical Facility. Having exhausted the grievance process by receiving the response to Plaintiff's BP11, and informing Beam of his intentions to sue, Plaintiff was told he was now going to be referred to the Neurosurgeon.

Once threatened with legal action, Beam eventually scheduled the consult with the Neurosurgeon, this consult taking place one year after the injury, eight months after the initial recommendation for a neurosurgeon consult, seven months after the MRI confirmed a " large acute herniation ", six and a half months after the Orthopedist's second recommendation for referral, and nearly six months after Region tasked the Defendants to "pursue local treatment". (BP10 response)

Also, plaintiff was informed in the same response that " you are scheduled to be evaluated by a local contract orthopedic surgeon at the earliest possible opportunity to discuss treatment options."( see BP10 response and Cooleen's declaration paragraph 30) This "scheduled " appointment never took place.

The Courts have found that " preventing an inmate from receiving recommended treatment for a serious medical need, or denying access to a physician capable of

8

evaluating the need for treatment " constitutes deliberate indifference. " See MCCI 834 F2d. 320, 346-47 (3rd Cir.1987)   see also Durmer vs. O'Carroll 991 F2d.64, 68 (3rd Cir. 1993). Plaintiff was delayed and denied numerous times and was exposed to needless suffering due to the deliberate indifference of the Defendants to his serious medical need. Plaintiff continues to suffer as a result of Defendants actions.

While it is plaintiffs belief that Defendants will continue to assert that this is a difference of medical opinion and that their " conservative treatment" was the proper course , this perspective has been addressed and is irrelevant to the claim before this Honorable Court. The fact that the herniated disc was receded fourteen months from the injury is not remarkable in any way and is not pertinent to the Eighth Amendment violations that form the basis for this remaining claim. This issue fell away along with the Tort Claim , as did whether or not what the Defendants so liberally refer to as " conservative treatment " was proper.

. Canceling Plaintiff's follow-up with the Neurosurgeon also violated his Eighth Amendment rights, and the retaliatory transfer , for demanding that appointment be rescheduled,( see Cooleen's declaration paragraphs 40-43 ) made any hope of the prescribed medical treatment impossible. Plaintiff was designated to McKean by his sentencing Judge that he may remain close to home and family. Any claim that the transfer was to" relieve overcrowding" one would look to the ever growing population reports posted weekly by the BOP. Only by building more prisons or releasing those qualified and nearing the end of their term would any issue of overcrowding be truly addressed. Cooleen was transferred for attempting to secure the prescribed treatment and for assisting others in their own attempts to secure their rights as guaranteed by the

Eighth Amendment to the United States Constitution. The opinion in MCCI makes it clear that preventing recommended treatment, for a serious medical need, or denying access to a physician capable of evaluating the need for treatment constitutes deliberate indifference.

. What remains clear on the record is a pattern of deliberate indifference to Plaintiff's serious medical need through the aforementioned denials and ultimate delay of access to a physician capable of evaluating and treating the plaintiff's serious medical needs, as well as delays and denials of prescribed treatment, diagnostics and referrals to other specialists. Plaintiff needlessly suffered physically and emotionally and is claiming compensatory damages( pain and suffering/mental anguish, present and future economic loss ,and hedonic loss ) as well as punitive damages , to be assessed by a jury

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted in all respects to the remaining Bivens Claim and the Honorable Court should grant such further relief as the Court may deem just and proper.

Dated: 5-13-08

Fredonia , New York

Respectfully Submitted ,

*Timothy M Cooleen*
Timothy Cooleen , pro-se


Timothy Cooleen
8777 Chautauqua Road
Fredonia, New York 14063

10

## CERTIFICATE OF SERVICE

I, Timothy Cooleen, pro-se, hereby certify that a true and correct copy of **Plaintiff's Motion for Summary Judgment Pursuant to Rule 56(a) FRCP as well as the attached Order, Affidavit and Memorandum of Law** was served via First Class Mail to and upon the following :

        Paul D. Kovac AUSA
        Western District of Pennsylvania
        US Post Office and Courthouse
        700 Grant Street, Suite 400
        Pittsburgh, Pennsylvania  15219

Dated: 5-14-08

        */s/ Timothy Cooleen*
        Timothy Cooleen, pro-se