IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY COOLEEN,
        Plaintiff          Civil action No. 04-0063 ERIE

vs.

                          HON. Sean McLaughlin, USDJ
                          HON Susan Paradise Baxter, USMJ

JOHN LAMANNA, et al.,
        Defendant

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

AND NOW comes Plaintiff, Timothy Cooleen, pro-se, in accordance with Rules 12(b)(6) and 56 of the the Federal Rules of Civil Procedure and as ordered by this Honorable Court, to respond in opposition to Defendants motion to Dismiss Plaintiff's Second Amended Complaint or, in the Alternative, for Summary Judgment and has also previously moved for Summary Judgment in favor of the Plaintiff.

The case has been returned to this Honorable Court after the Third Circuit Court of Appeals denied defendants motion for summary action, and directed the parties to address whether any delays in Cooleen's medical treatment violated the Eighth Amendment. After briefs were filed, the Appellate Court has now returned this case to the District Court as they stated that the District Court's analysis did not address the issue of prison officials' delay and denial of recommended treatments and could not

conclude on the record, that a genuine issue of material difference of material fact does not exist .

    First and foremost, it is the Defendants continued denial of not only the seriousness of Plaintiff's injury and subsequent violations of his Civil Rights, but also their continued downplaying throughout these proceedings that further define their apparent lack of understanding ( or even caring) of the details. The MRI report states a " large acute" herniation at L4/L5 . In medical terms, large is self explanatory, while acute defines 'severe". Defendants choice to drop the "Large" in their motion for Summary Judgment (page 5 referring to Beams re-declaration…) is wholly indicative of what went on throughout the entirety of this case. How nice it would be to re-visit ones previously sworn to declaration and fine tune it to serve their needs having likely already glimpsed the Plaintiff's filed Motion for Summary Judgment.

    Regardless of how many times Plaintiff sought timely and appropriate care ( this would be "prescribed" or recommended care, access to one capable of properly evaluating Plaintiff's injury, or the diagnostics ,referrals or follow-up appointments recommended by "specialists") evaluations, and "seeing" someone is not treatment. It is denying and ultimately delaying needed medical care for a serious injury. <u>See Hunt v Uphoff, 199 F.3d at 1223-24</u> that held an inmates claim that he was denied adequate and timely medical assistance did not reflect " mere disagreement with his medical treatment" and that " the fact that he has seen numerous doctors [does not ] necessarily mean that he received treatment for serious medical needs, i.e. that treatment was prescribed at all, or that prescribed treatment was provided ." Defendants go to great lengths to say how many times plaintiff was " seen" over the next two months

(see Beams new Declarations para.15-19 quoted on page 4 of Defendants motion for Summary judgment). If defendants' conservative treatment had favorable results, why then did Cooleen's condition degrade to an inability to walk or sit without excruciating pains? These observed pain levels are recorded in the medical file by prison and contract medical personnel on several occasions and are not the " self serving declarations" as the Defendants claim on page 21 of their motion. The glaring differences in plaintiffs "observed" condition and pain levels in regard to the reasoning behind his delayed diagnostics have been pointed out by the Appellate Court and in Beams re-declaration he attempts to now claim that security was the issue in scheduling an MRI.

This might be an issue if Plaintiff was anything but a Minimum security inmate. More pointedly, in opposition to the " security issue" Plaintiff was not only a minimum security inmate, Cooleen was also classified as "Out Custody" the lowest form of security risk and had been leaving the facility every workday as part of a Forestry crew supervised only by a US Forestry employee. Also of note, at this point, Plaintiff could now barely walk without excruciating pains from an injury that worsened from the lack of access to one capable of evaluating the herniated disc. And once that access was granted after Plaintiff had filed his BP8, the Orthopedist's recommendations for further diagnostics were disregarded and Plaintiff was denied his civil rights and suffered needlessly while " but for the grace of God" he remained at risk for life altering and permanent damage from a herniation so large it intruded a full 50% into the spinal canal. Having been denied reasonable requests for medical treatmen , this undue suffering and threat of tangible residual injury has been found to constitute deliberate indifference. See Monmouth v. Lanzaro, 834 F.2d 326,346-47 (3rd Cir. 1987); see also Durmer v.

3

O'Carroll, 991 F.2d 64, 68 (3rd Cir. 1993)

This centrally located herniation is **exactly** the type that often results in the syndrome Defendants describe as " Cauda Equina" ,an often sudden and permanently debilitating loss of function in many of the lower extremities. Dr. Soares "recommendation" was for a Neurosurgeon consult as he was unqualified to do what he believed was out of his realm of expertise, and accordingly …out of the realm of the expertise of Defendant Beam.

The Defendants word splitting when it comes to " recommended" and "possible" diskectomy fails to realize it is one Doctors way of stating it is appropriately the expertise of another higher trained specialist that is needed . The Orthopedist believed that Cooleen needed a Neurosurgeon to properly evaluate his injury and that any decision for treatment be determined by the specialist he recommended. Plaintiff was denied that access and suffered needlessly due to the deliberate indifference on the part of the  Defendants .

While awaiting the recommended diagnostics and the orthopedist's referral to a Neurosurgeon plaintiff's pain levels were so severe, had been bed ridden since early July, was unable to sit for meals and attending medical personnel noted his condition in the medical file, including a July 24th,2002 entry by Dr. Soares  recording that Plaintiff " continues to have severe leg pains". So obvious were Plaintiffs pain levels and need for specialized medical attention, even to the Defendants,  that prison officials requested to regional BOP to transfer him to a Medical Center for care. This most of all evidences the defendants' awareness of the substantial risks of Plaintiff's now confirmed spinal injury and satisfies the subjective recklessness or conscious disregard of a substantial risk of harm in their failure to arrange  the recommended consult with the

4

Neurosurgeon. See Farmer v Brennan, 511 US 825,839(1994) where to be actionable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Defendants were aware of the severity of the injury and sought to transfer Plaintiff to a specialized medical center, satisfying this prerequisite fully. Once tasked to " pursue local treatment" defendants denied the previously recommended referral to the Neurosurgeon. Plaintiff was never afforded the treatment described in the Region's response to his BP10, or scheduled with **anyone** as assured by that response. Plaintiff's pleas to schedule the referral the Orthopedist made for a Neurosurgeon consult were denied. The Appellate Court also notes how Plaintiff repeatedly sought the prescribed treatment.

Again, Plaintiff was denied access to one capable of properly diagnosing and ultimately ,one capable of properly treating his spinal injury. Plaintiff suffered needlessly, and continues to suffer due to the denial of his Eighth Amendment rights as defined throughout the last three decades. Any assertion that, even if Defendants actions amounted to deliberate indifference, that they could claim they did not know it, is a feeble attempt that would fail with even the most naïve of prison officials. This case in particular cannot claim such a defense as Plaintiff repeatedly informed the Defendants of the ongoing violations of his Civil Rights and his plan to sue if the violations continued.

While not wishing to be drawn into the vortex of past dismissed negligence claims, Plaintiff needs to address issues that touch closely the previously dismissed, and affirmed claims as the Defendants maintain their actions were the proper course and that no one was deliberately indifferent to Plaintiff's serious medical needs.

5

Both in Beam's Re-Declaration and in the Defendants Motion for Summary Judgment mention is made of the "positive leg raise" . By reading their previously filed motion, one would almost believe that the positive leg raise is a good thing. It is pointed out later in by the Defendants in referencing the Neurosurgeon consult as if it were , well...positive. It is anything but.

In fact, a " positive leg raise " is a simple test that <u>confirms</u> an impinged nerve. It is a provocation of pain upon lifting the afflicted leg , sometimes as little as a 20 degree raise before a positive provocation of pain is elicited. Nurse Fairbanks performed this test and noted her observations in the medical records ( see Med file notes dated July 17, 2002 ). The defendants notation of this " positive leg raise" as a good thing further confirms either Beams unfamiliarity with spinal injuries or the defendants counsel having not clarified this term before using it to further their claim that the treatment, or rather, the lack thereof, was successful.

Had Plaintiff been granted access to one capable of properly diagnosing his spinal injury , after reasonable requests for an appointment with the orthopedist ,his injury may not have worsened to a point of being so painfully unable to walk, let alone sit through a meal . Being returned to full work status having not had a proper diagnosis moreover contributed to the worsening of his condition, rather than Plaintiff's post injury choice to use aspirin ( Plaintiff has always responded well to Aspirin for anti-inflammatory needs) as opposed to ibuprofen( painful constipation, noted in medical file, complicating an the already difficult task of defecating with a herniated disc ) as the defendants contend in their most recent motion for Summary Judgment.

Plaintiff does not , as Defendants state in their response (page 2), " still insist(s) that

6

there was deliberate delay based upon the fact that surgery was not immediately provided and certain physicians of his choice were not consulted as regularly as plaintiff insists." Defendants' counsel seeks to put words in Plaintiff's mouth.

In Defendants Motion for summary judgment, (page 18 )Counsel quotes plaintiff's deposition (pages 70-71) and states Plaintiff claims a "delay in scheduling surgery" as one of the grounds upon which his claim is based. Plaintiff cannot find any reference to " surgery " in the above quoted pages, but does find " delay of prescribed treatment", "denial of prescribed treatment" , failure to grant access to an " individual who is qualified to evaluate the injury" and Klark's actions that Plaintiff states as the grounds for his Civil Rights claim.

Plaintiff's Eight Amendment claim is founded in the denials of reasonable requests for medical treatment, delay and denial of a physician capable of evaluating his injury, and delay and denial of recommended or prescribed diagnostics and referrals to other specialists who were capable of evaluating his injury and properly determining the course of Plaintiff's treatment. It would have been the Neurosurgeon's determination to offer surgery as appropriate treatment and plaintiff was denied access after the referral was recommended by the treating Orthopedist as he stated he was unqualified to do the surgery he believed was needed. Defendants point out that no physician "<u>mandated</u>" surgery. Plaintiff contends he was denied access to the only one who could have made that determination. In fact, when finally presented with the MRI taken five full months after the injury, and after examining Plaintiff the Neurosurgeon **did** schedule surgery. Upon administering a new MRI prior to the scheduled surgery , it was determined to be inadvisable at this point as the disc had receded but there was lasting damage. This

7

damage, an abraiding of the nerve root is noted in a letter to prison officials that states," I can't fix that" he goes on to describe how the problem is not gone and ' it is not at all to be construed that he's perfect and that there's nothing wrong with him now." All that aside, Plaintiff was initially denied and ultimately delayed access to the only one capable of making a determination to do surgery, and once that access was granted, albeit a year from the injury, it was now too late and the damage remains.(see Gilman Letter dated May 23, 2003 )

Despite defendants claim of all the " attention" plaintiff received , Cooleen suffered needlessly as he was **denied** reasonable requests for the recommendations of the Orthopedist for timely **prescribed** diagnostics ,**referral** for pain management and **recommended** consult w a Neurosurgeon, and **denied** a prescribed follow up before transferring plaintiff in retaliation for seeking prescribed medical treatment.

Being " seen" is not treatment, and it is certainly not the prescribed or recommended treatment the Plaintiff had a right to. This is all matter of record, and not merely the declarations of the Plaintiff. This all is documented in the Medical File.

In <u>Hathaway v Coughlin 37 F.3d 63,68 ,(2d Cir.1994) cert denied,513 US1154(1995),</u> As well as <u>Monmouth County Corr.Inst.Inmates v.Lanzaro,834,F.2d326,346(3dCir.1987) cert denied 486 US 1006 (1988),</u> deliberate indifference was found despite "frequent" examinations by a physician as in this case when plaintiff repeatedly complained of severe pain, defendant doctor's frequent examinations of plaintiff did not preclude a finding of deliberate indifference, because " [a] jury could infer deliberate indifference from the fact that [defendant] knew the extent of [plaintiff's] pain, knew that the course

of treatment was largely ineffective, and declined to do anything more to attempt to improve [plaintiff's] situation." In this case, Defendants were aware of the ineffectiveness of their anti inflammatories and "conservative treatment", and repeatedly refused to follow the recommendations of their contract orthopedist. The Court has also found deliberate indifference where prison officials continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm. See Rouse v. Plantier, 182 F.3d 192,197 (3rd Cir. 1999) ; White v. Napolean , 897 f.2d 103, 109 (3rd. Cir.1990)

As Plaintiff's sole remanded claim is one of deliberate indifference in violation of the Eighth Amendment to the United States Constitution, and is based on a **record** of denial and delay of access to one capable of evaluating his injury, denial and delaying of prescribed diagnostics and referrals to specialist as well as the scheduled follow up appointment with the Neurosurgeon, Plaintiff wonders why the defendants still treat this claim as they would a medical negligence claim. Plaintiff believes defendants seek to cloud the issue and their use of a retained Medical specialist has little benefit in a civil rights claim that is fully supported by the record. I wonder if I had been referred to *their* specialist, would the appointment have been made or denied as in this case? Also, Plaintiff can find no claim by the Defendants retained medical expert stating that the recommendations or referrals by the Orthopedist **do not** appear in the medical file or that it is common with community standards to disregard the recommendations or prescribed treatment of a specialist consulted in regards to a spinal injury . And oddly, he refers to the " large acute herniation at L4/L5" (see MRI report dated August 21, 2002 ) as a "moderate" herniation in his " independent medical opinion" .

9

Though the defendants claim in their motion for Summary Judgment that only delay in treating "life threatening "conditions rise to deliberate indifference and quotes a Second Circuit case ,Demanta v New York State Corr. Dept.of Health Services 198 F.2d 233 (2d Cir.1999) , conditions that produce a substantial harm such as extreme pain , risk residual injury and are left untreated also rise to a constitutional violation. See MCCI

Plaintiff lost ten percent (10%) of his bodyweight while he languished in pain, bed ridden from early July 2002 until food delivery was halted on or around October 3, 2002 after which he had arranged to have food stolen from the chow hall and for others to carry his commissary goods against BOP policy . Returning to plaintiff's Eighth Amendment claim…plaintiff suffered and continues to suffer due to the aforementioned violations of his civil rights. And while Defendants seek to reduce or diminish the foundation of these claims listing merely three (3) issues they believe the Appellate Court felt needed reconsideration, plaintiff has made numerous claims that the Appellate Court had cited. Among them,1) initial denial of reasonable requests to have an appointment scheduled with the Orthopedist, 2) denying and delaying the MRI recommended **twice** ,3) denying and delaying the recommended referral to a Neurosurgeon ,4) denying the treatment I was informed I would receive after the administration sought my transfer due to the severity of my injury and they were tasked to ' pursue local treatment" and assured I was " scheduled at the earliest opportunity" to see an orthopedist to discuss treatment options. 5) canceling of prescribed follow up with neurosurgeon , 6) continuing with a course of treatment known to be ineffective and painful, and 7) Klark's retaliatory cancellations of Plaintiffs commissary assistance due to his continued filing of grievances as he sought to have the spinal injury treated

Those previously " unknown, unnamed members of the URC " have been identified through previous declarations . Smith, Beam, Montgomery are those named defendants, among others, who sat as members of the URC during times relevant to this claim. The URC's decisions to deny the initial MRI requests fall on the named defendants as well as their decision to cancel Plaintiff's follow up with the Neurosurgeon. Even a casual connection to the violation is enough to not escape liability, and Smith's decision to cancel the follow up is enough to form an affirmative act in violation of Plaintiff's Civil rights. See Lewis v. Smith 855 F.2d 736 ( 11th Cir. 1998) where " Supervisory liability under sec. 1983 may be shown by either supervisor's personal participation in acts that comprise constitutional violations or existence of casual connection linking supervisor's action with violation.42 USCA sec. 1983."

LaManna , as well, cannot escape liability as he participated in erecting arbitrary and burdensome procedures that created interminable delays and outright denial of care in the formation of the URC along with his direct involvement through the BP grievance process and through his active handling of the case in which he assured Plaintiff's mother that he would see to her sons medical needs after she wrote pleading for his assistance in gaining the prescribed care. See Lewis.

Disparaging remarks by the Defendants Counsel as to plaintiff being his own self appointed medical expert as Cooleen describes his own personal experience of near fifteen years with a similar injury, only reaffirms defendants fear of educated victims of their reckless disregard of their heath and safety.  Plaintiff sought , from the onset, access to one capable of evaluating and treating his injury, and that access was denied and delayed. Plaintiff sought in more than one BP filing, "surgery if necessary" if the

11

Neurosurgeon believed it to be the proper course. Plaintiff was denied recommended access to that specialist, ultimately providing access a year after the injury. By then... it didn't matter.

While Defendants wish you to believe the outcome, their perspective or mine, is a key factor. It is not. Though I feel the effects of their indifference everyday, affecting my home life, earning potential, and enjoyment of life ...this remaining issue is one of a series of violations of my Civil Rights as I sought treatment for a serious injury while in the care and custody of the Defendants.

Accordingly, I sincerely hope that this Honorable Court, in keeping with our ever evolving standards of decency, finds the actions of the defendants violated Cooleen's civil rights, and grant summary judgment on this last remaining issue in favor of the plaintiff.

Respectfully submitted,

Timothy M. Cooleen, pro-se

Dated: 6-30-08

Timothy M. Cooleen
8777 Chautauqua Road
Fredonia, New York 14063

## CERTIFICATE OF SERVICE

I, Timothy Cooleen, pro-se , hereby certify that a true and correct copy of **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ,or in the alternative, for Summary Judgment** was served via First Class Mail to and upon the following :

Paul D. Kovac AUSA
Western District of Pennsylvania
US Post Office and Courthouse
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15219

Dated: 6-30-08

_____
Timothy Cooleen, pro-se

Clerk of the Court                                        Timothy Cooleen
United States District Court                              8777 Chautauqua Road
WDPA  Erie                                                Fredonia , New York
PO Box 1820                                               14063
Erie PA 16507

June 30th, 2008          Re:  **Cooleen vs. LaManna Civil Action No. 04-0063 ERIE**

Dear Clerk,

Enclosed, please find an original of **Plaintiff's Response in Opposition to Defendants Motion to Dismiss, or in the alternative for Summary Judgment**, along with **a Certificate of Service** upon Counsel for the Defendants.

My apologies for possibly having not forwarded a previous certificate of service for my summary judgment motion, as I have noticed what appears to be the original I made the defendants copy from , still here within my files.

I am enclosing it in the event that I did not forward you one for the file.

If you need anything else…please let me know.

Sincerely,

*Timothy M. Cooleen*

Timothy M. Cooleen , pro-se

## CERTIFICATE OF SERVICE

I, Timothy Cooleen, pro-se, hereby certify that a true and correct copy of **Plaintiff's Motion for Summary Judgment Pursuant to Rule 56(a) FRCP as well as the attached Order, Affidavit and Memorandum of Law** was served via First Class Mail to and upon the following:

        Paul D. Kovac AUSA
        Western District of Pennsylvania
        US Post Office and Courthouse
        700 Grant Street, Suite 400
        Pittsburgh, Pennsylvania 15219

Dated: 5-14-08

                                                        Timothy Cooleen, pro-se